IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RANDY W. WILLIAMS, TRUSTEE OF § <br> THE WEST HILLS PARK JOINT VENTURE § <br> BANKRUPTCY ESTATE, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> THE HOME DEPOT USA, INC., § <br> § <br> Defendant. § | CIVIL ACTION NO. H-10-2493 |

**MEMORANDUM AND ORDER**

The bankruptcy trustee for West Hills Park Joint Venture ("West Hills Park"), Randy Williams, sued Home Depot USA, seeking contractual indemnification for a Texas state court judgment based on negligence and strict liability. Both parties have filed summary judgment motions. Home Depot has moved for summary judgment that the agreement does not entitle West Hills Park to indemnity for its own negligence or for strict liability. (Docket Entry No. 5). West Hills Park responded, (Docket Entry No. 7), Home Depot replied, (Docket Entry No. 10), and West Hills Park surreplied, (Docket Entry No. 11).[1] West Hills Park has moved for summary judgment that Home Depot must indemnify it for the state court judgment. (Docket Entry No. 8). Home Depot responded, (Docket Entry No. 12), and West Hills Park replied, (Docket Entry No. 13).

Based on the record, the motions, and the relevant law, this court grants West Hills Park's motion for summary judgment and denies Home Depot's motion. A status conference is set for

---

[1] In its surreply, West Hills Park objects to Home Depot's delay in filing its response and the excessive length of the filing as well as certain portions of its content. (Docket Entry No. 11). After considering West Hills Park's objection, the court finds no reason to strike Home Depot's reply from the record.

**August 1, 2011, at 8:30 a.m.**  The reasons for these rulings are explained in detail below.

I.      **Background**[2]

West Hills Park and Home Depot agreed to develop a shopping center on two contiguous tracts of land in Huntsville, Texas.  They signed a Reciprocal Easement and Operation Agreement ("the Agreement"), dated October 16, 2001.  The Agreement contains the following reciprocal indemnification clause:

> Each Owner shall indemnify, defend, save and hold every other Owner, tenant, and occupant of the Center harmless (except for loss or damage resulting from the tortious acts of such other parties) from and against any damages, liabilities, actions, claims, and expenses (including attorneys' fees in a reasonable amount) in connection with the loss of life, bodily injury, personal injury and/or damage to property arising from or out of any occurrence in or upon such Owner's Parcel, or occasioned wholly or in part by any act or omission of said Owner, its tenants, agents, contractors, employees, or licensees.

(Docket Entry No. 5, Ex. A, ¶ 4.1).  Home Depot and West Hills Park are the "Owners" under the Agreement.  (*Id.*, Preliminary Statement).

In 2001 and 2002, before building began, the parcels were cleared, graded, and excavated. West Hills Park and Home Depot dispute who was responsible for the excavation work and who ordered it performed.  (Docket Entry No. 1; Docket Entry No. 7, Ex. A).  The excavation removed approximately ten feet of dirt near an adjacent property owned by Boxcars Properties, Ltd.  The

---

[2]   The summary judgment record consists of: the Agreement, (Docket Entry No. 5, Ex. A); West Hill's Park's original complaint, (*Id.*, Ex. B); Boxcars' motion to sever Home Depot as a party in the earlier suit (*id.*, Ex. C); a motion for nonsuit with prejudice in the earlier suit, (*id.*, Ex. D);  the final judgment in *Boxcars v. West Hills Park Joint Venture*, (*id.*, Ex. E; Docket Entry No. 7, Ex. C; Docket Entry No. 8, Ex. B); the verdict form in the state-court suit, (*id.*, Ex. F); Home Depot's original answer, (Docket Entry No. 7, Ex. A; Docket Entry No. 8, Ex A); the trial testimony of Shelley Adkins from the state-court suit, (Docket Entry No. 7, Ex. B); a contract between Home Depot and Rockwell Construction Corp., (*id.*, Ex. C); excerpts from the deposition of Alvin Freeman, (*id.*, Ex. D; Docket Entry No. 8, Ex. D); and the complete transcript of the deposition of Alvin Freeman, (Docket Entry No. 9)

summary judgment evidence showed that the excavation damaged apartment buildings and a swimming pool on the Boxcars's property. Boxcars sued West Hills Park and Home Depot, as well as other participants in the project. (Docket Entry No. 5, Ex. B). Home Depot settled with Boxcars, paying $867,500, and was dismissed from the suit. (Docket Entry No. 5, Exs. C, D). Boxcars proceeded against West Hills Park on the claim that the excavation and related work caused a loss of lateral support for the Boxcars buildings and pool.

The verdict form asked the jury to consider two theories of liability: negligence and strict liability. Question 1 to the jury asked: "Was activity, if any, on West Hills Park Joint Venture's real property a producing cause of a loss of lateral support to the Boxcar Properties, Ltd.'s property?" (Docket Entry No. 5, Ex. F at 4). The jury was instructed that loss of lateral support requires that:

>   a. West Hills Park Joint Venture be an adjacent property owner;
>
>   b. The loss of lateral support occurs from some activity on the West Hills Park Joint Venture's property; and
>
>   c. The loss of lateral support is a producing cause of Boxcars Properties, Ltd.'s damages.

(*Id.*). Question 2 asked: "Did the negligence, if any, of West Hills Park Joint Venture proximately cause the occurrence in question?" (*Id.* at 5). The jury answered "yes" to Questions 1 and 2. *Id.* Question 3 asked:

>   What sum of money, if paid now in cash, would fairly and reasonably compensate Boxcar Properties, Ltd. for its damages, if any, for (a) the difference in market value of Boxcar Properties, Ltd. land and improvements immediately before and the value after the damages, if any, to the land and improvements and (b) loss of use of property resulting from the occurrence in question.

(*Id.* at 6). The jury answered $2,637,705 for the difference in market value, and $618,804 for loss of use. *Id.* The court subtracted $867,500 from the jury's verdict as a settlement credit and entered

judgment that West Hills Park was liable to pay Boxcars $2,859,009. (Docket Entry No. 5, Ex. E).

West Hills Park declared bankruptcy. Randy Williams, the bankruptcy trustee, sued Home Depot to recover the judgment under the Agreement's indemnification provision. West Hills Park alleges that Home Depot or a contractor working for Home Depot excavated the area along West Hills Park's boundary with the Boxcars property, and that this excavation caused the loss of lateral support that damaged the property and improvements. (United States Bankruptcy Court for the Southern District of Texas — Houston Division, Case 10-03110, Docket Entry No. 1, ¶¶ 7–10). Home Depot objected to conducting the jury trial before the bankruptcy court and the case was transferred to this court. (Docket Entry No. 1).

The parties filed cross-motions for summary judgment. Home Depot argues that under the fair notice doctrine, the Agreement does not require it to indemnify West Hills Park's for its own negligence and strict liability.[3] West Hills Park argues that the fair notice doctrine does not apply because the undisputed evidence shows that it was Home Depot, not West Hills Park, that caused the damage to the Boxcars property. (Docket Entry No. 7, 8). Home Depot responds that issue preclusion prevents West Hills Park from relitigating whether it was negligent and whether that caused the property damage.

The arguments and responses are analyzed below.

---

[3] Home Depot also pleaded the affirmative defenses of release, contributory negligence, arbitration and award, payment, laches, and failure to mitigate damages in its original answer. (Docket Entry No. 7, Ex. A). West Hills Park argued in its motion for summary judgment that these defenses were unsupported, (Docket Entry No. 8, ¶¶ 23–35). Home Depot did not respond. The defenses are abandoned.

4

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Quality InfusionCare, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190,

1194 (5th Cir. 1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Mkts. LLC v. Tex–Wave Indus. LP*, 265 F. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 780 F.2d at 1194). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Meecorp Capital Mkts.*, 265 F. App'x at 158 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III.    Analysis**

    **A.    The Fair Notice Doctrine**

The fair notice doctrine requires indemnification clauses to state expressly the indemnitor's obligation to pay for damages arising out of the indemnitee's own negligence.  "Because indemnification of a party for its own negligence is an extraordinary shifting of risk, [the Texas Supreme Court] developed fair notice requirements which apply to [indemnification] agreements." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).  Under the fair notice doctrine, a party is not required to indemnify another party for that other party's negligence unless the contract expressly creates that obligation.  *Fisk Electric Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994).  The expression "must appear in the face of the [contract] to attract the attention of a reasonable person when he looks at it."  *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993); *Atl. Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 725 (Tex. 1989) (Fair notice "require[s] scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence."); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987).  The fair notice doctrine does not apply to indemnity for liability that is caused a person besides the indemnitee.  *Ethyl*, 725 S.W.2d at 707–708; *MAN GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43 (Tex. App. — Houston [14th Dist.] 1993, no writ) (finding the express negligence rule did not apply because "appellants are not seeking to recover for their own negligence").

The Texas Supreme Court has applied the fair notice doctrine in strict liability cases. *Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455, 458 (Tex. 1994); *Dorchester Gas Corp. v. Am. Petrofina, Inc.*, 710 S.W.2d 541, 543 (Tex. 1986).  Like the

7

express negligence cases, these case have emphasized the unfairness of making an indemnitor responsible for an indemnitee's actions unless the indemnitor has expressly agreed. *See, e.g.*, *Houston Lighting & Power*, 890 S.W.2d at 458 (reasoning that "the requirement that parties expressly state their intent to cover strict liability claims prevents the injustice that may occur when an innocent party incurs tremendous costs because of another's strict statutory liability [such as] when a party, itself not at fault, lacked fair notice of its potential liability under a less-than-specific indemnity clause").

Courts applying Texas law have refused to require express notice of strict liability that does not occur as a result of the indemnitee's actions. *Martin K. Eby Constr. Co., Inc. v. One Beacon Ins. Co.*, Nos. 08-1250-WEB, 08-2392-WEB, 2011 WL 721545, at *7 (D. Kan. Feb. 22, 2011) (applying Texas law); *Tex. Dep't of Transp. v. Metro. Transit Auth. of Harris Cnty.*, No. 01-01-00613-CV, 2002 WL 724927, at *2 (Tex. App.— Houston [1st Dist.] Apr. 25, 2002, no pet.) (unpublished) (finding the fair notice doctrine inapplicable when the indemnitee's strict liability arose because the indemnitor and indemnitee were joint venturers). The courts have emphasized that the Texas Supreme Court applied the fair notice doctrine to strict liability claims only in "cases that deal[t] with an indemnitee seeking recovery for actions arising out of its own negligence and, therefore, [were] subject to the express negligence doctrine." *Metro. Transit Auth.*, 2002 WL 724927, at *1. "Texas courts have not departed from the application of the fair notice doctrine, which has only been applied to cases in which indemnitee is seeking to shift liability for its own negligence." *Eby Constr.*, 2011 WL 721545, at *6.

Whether the fair notice doctrine applies, and if so, whether the contract language meets the fair notice requirement, may be determined on summary judgment. *MAN GHH*, 858 S.W.2d at 43.

The contract language providing for indemnification must be an "unmistakable, unambiguous and explicit statement within the four corners of the contract." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 611 F. Supp. 2d 654, 664 (S.D. Tex. 2009). "General, broad statements of indemnity" are not enough to transfer responsibility when the fair notice requirement applies. *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 461 (5th Cir. 2002). The specific type of liability and the parties to which that liability attaches must be mentioned. The type of liability cannot be inferred from the inclusion or exclusion of other types. *Id.* at 465. The contract must include the actual words. *Quorum*, 308 F.3d at 467; *Lee Lewis Constr., Inc. v. Harrison*, 64 S.W.3d 1, 21 n. 13 (Tex. App. — Amarillo 1999) *aff'd*, 70 S.W.3d 778 (Tex. 2001); *Monsanto*, 764 S.W.2d at 296.

West Hills Park initially contended that Home Depot waived its fair notice argument by not pleading it as an affirmative defense in its original answer. Fair notice is a rule of contractual interpretation, not a defense that must be pleaded and proved. *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 374 (Tex. App. — Houston [14th Dist. 2005], no pet.). This argument is unpersuasive.

West Hills Park contends that it should be indemnified under the following language: "Each Owner shall indemnify . . . every other Owner . . . (except for loss or damage resulting from the tortious acts of such other parties) from and against any damages, liabilities, actions, claims, and expenses (including attorneys' fees in a reasonable amount) in connection . . . damage to property . . . occasioned wholly or in part by any act or omission of said Owner, its tenants, agents, contractors, employees, or licensees." The Agreement expressly excludes indemnity for "loss or damage resulting from the tortious acts of such other parties." The contract does not require Home Depot to indemnify West Hills Park for its own tortious acts causing the damage to the Boxcars

9

property. If, however, the actions of Home Depot or one of its agents caused West Hills Park to be held liable, the fair notice doctrine does not apply.

The critical issues are whether the state court judgment precludes West Hills Park from litigating its contention that Home Depot or its agent is liable for the damage to the Boxcars property, and if not, whether the summary judgment record establishes, as a matter of law, that Home Depot or its agent caused the damage.

### B.     Issue Preclusion

Home Depot contends that the state court jury verdict and judgment based on the verdict that West Hills Park was liable for negligence and for strict liability for actions that caused a loss of lateral support to the Boxcars property, prevents West Hills Park from arguing in this case that Home Depot or one of its agents was at fault.

The Full Faith and Credit Act governs the preclusive effect of a state-court judgment in a subsequent federal action. 28 U.S.C. § 1738. Final judgments of state courts "have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." *Id*. "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering state gains nationwide force." *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). A federal court applies the rendering state's preclusion law to determine whether to accord a state court's final judgment preclusive effect. 28 U.S.C. § 1738; *Lance v. Dennis*, 546 U.S. 459 (2006); *Lange v. City of Batesville*, 160 F. App'x. 348, 351–52 (5th Cir. 2005). Texas preclusion law applies.

Texas follows the issue preclusion rules set out in the RESTATEMENT (SECOND) OF JUDGMENTS. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519 (Tex. 1998). Under these rules, a party cannot litigate an issue already raised and determined in an earlier action between the same parties if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Johnson & Higgins*, 962 S.W.2d at 522 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. i). If, however, the judgment is appealed and the appellate court affirms both issues, the judgment is preclusive as to both issues. *Id.* Although the jury may not have given close attention to each theory of liability, appellate review ensures that each was carefully considered.

The issue is in this case is whether West Hills Park is precluded from asserting in this case that the damage to Boxcars was "occasioned wholly or in part by any act or omission of [Home Depot], its tenants, agents, contractors, employees, or licensees." (Docket Entry No. 5, Ex. A, §4.1). The state court verdict does not answer this question. The jury found West Hills Park liable for negligence and strict liability that resulted in a loss of lateral support on the Boxcars property. The jury's strict liability finding did not determine that West Hills Park's actions caused damage to Boxcars. The jury determined only that an activity occurred on the West Hills Park property and that this activity caused a loss of lateral support that was in turn producing cause of damage to Boxcars. The verdict form makes clear that the jury's damages finding did not distinguish between

11

negligence and strict liability. The verdict form asked the jury to answer Question 3, the damages calculation, "if you have answered Question 1 and/or 2 'YES.'" (Docket Entry No. 5, Ex. F at 6). Only the negligence finding would support issue preclusion in this case. That finding is not preclusive, however, because the state court judgment rests on two grounds and was not appealed and affirmed. Issue preclusion does not apply.

### C.     The Summary Judgment Evidence

West Hills Park has presented evidence that the excavation on property it owned caused the loss of lateral support to the adjacent Boxcars property. There is no dispute that Home Depot and West Hills Park were the only developers of the store being built on the Home Depot/West Hills Park land. Shellee Adkins, an assistant manager of the Boxcars property at the time, testified that cracks appeared in the swimming pool and the foundations of the apartment buildings on the Boxcars property in the months immediately following the excavation of approximately ten feet of dirt on the West Hills Park/Home Depot parcel. (Docket Entry No. 7, Ex. A at 6, 12–13). A retaining wall was not built until six months after the excavation. Adkins testified that she noticed "water and [sediment] that was steadily flowing" from the remaining dirt before the wall was built. (*Id.* at 15). Adkins testified that the Boxcars property lost "a lot of trees" during the excavation. She noticed cracks in the brick veneer and in the foundations of several buildings, along with cracks in the swimming pool, beginning in July 2002. (*Id.* at 6–8). She testified that she had never seen these cracks before the excavation . (*Id.* at 11–12).

West Hills Park's corporate representative, Alvin L. Freeman, testified that West Hills Park did not hire an excavator for the shopping center development. (Docket Entry No. 8, Ex. D). The summary judgment record contains a contract between Home Depot and Rockwell Construction

Corporation of Texas, Inc. The contract calls for Rockwell to complete "[e]arthwork" and "[m]odular retaining walls" on the Home Depot/West Hills Park site in 2001. (Docket Entry No. 8-3 at 8). The contract directs Rockwell to locate subcontractors to perform work for which it lacked experience and gives Home Depot the right to choose the subcontractors. (*Id.* at 18).

The summary judgment record entitles West Hills Park to judgment as a matter of law. Home Depot does not dispute in its response to West Hills Park's motion for summary judgment that it was the excavation work that damaged the Boxcars property. Home Depot contends that the summary judgment evidence is insufficient to establish that it is responsible for that excavation work. Home Depot argues that West Hills Park "1) has failed to establish that Home Depot committed acts which caused damage to Boxcars; 2) has not identified Home Depot's purported agent who committed the allegedly negligent acts; and 3) has not established the agency relationship between Home Depot and the allegedly negligent and unidentified agent." (Docket Entry No. 12 at 6). Home Depot characterizes Freeman's testimony as "inconclusive and uncertain," but does not identify what aspects of the testimony are inconclusive or uncertain.

Freeman's testimony that West Hills Park did not hire the excavator is uncontroverted. *See Smith v. Liberty Life Ins. Co.*, 535 F.3d 308 (5th Cir. 2008) (affirming the district court's reliance on uncontroverted testimony that a driver was intoxicated to meet an insurer's burden to prove that the driver was intoxicated). Home Depot does not suggest someone other than an agent either of West Hills Park or Home Depot performed the excavation. Home Depot does not offer evidence or even argue that West Hills Park or anyone acting at the direction of West Hills Park excavated the property. Home Depot entered into a contract with Rockwell that called for Rockwell to excavate and supply a retaining wall on the property in 2001, which was before excavation work and

13

the damage to the Boxcars property occurred. (Docket Entry No. 7, Ex. C). There is no evidence in the record to support an inference that anyone other than an agent of Home Depot hired the excavator. Such speculation does not create a fact issue that defeats summary judgment. *State Farm Fire & Cas. Co. v. Delta Beverage Co.*, 401 F. App'x 955, 959 (5th Cir. 2010) (per curiam) (unpublished) (citing *Granger v. Guillory*, 819 So.2d 477, 481 (La. Ct. App. 2002) ("We only have the Defendant's speculation that someone else must have done the nefarious deed, since he did not.")); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) ("This Court has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

Home Depot is correct that the record does not establish who performed the excavation for Home Depot, but that person's identity is not material. What is material is that the excavation was performed by an agent of Home Depot. It is undisputed that the excavation caused the damage to the adjacent Boxcars property. Summary judgment in West Hills Park's favor is appropriate.

**IV.    Conclusion**

West Hills Park's motion for summary judgment is granted. Home Depot's motion for summary judgment is denied. A status conference is set for **August 1, 2011, at 8:30 a.m.**

SIGNED on June 23, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge