**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RANDY W. WILLIAMS, TRUSTEE OF | § | |
| THE WEST HILLS PARK JOINT VENTURE | § | |
| BANKRUPTCY ESTATE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2493 |
| | § | |
| THE HOME DEPOT USA, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION ENTERING FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

**I.      Introduction**

West Hills Park Joint Venture ("West Hills Park") sued Home Depot USA, Inc. ("Home

Depot"), seeking contractual indemnification for a damages judgment. That judgment, issued in a

Texas state court after a jury trial, arose out of work done to prepare land in Huntsville, Texas for

development that included building a Home Depot store. The development was on a tract that West

Hills Park had sold to Home Depot and an adjoining tract that West Hills Park still owned. The

judgment awarded over $ 2 million in damages to Boxcars Properties ("Boxcars"), which owned the

land adjacent to the Home Depot and West Hills Park tracts. Boxcars owned and operated an

apartment complex on this land. In the state-court suit, Boxcars alleged that the development work

done on the Home Depot and West Hills Park tracts, including clearcutting trees, excavating and

grading, and related acts and omissions, caused a loss of lateral support to the Boxcars property,

resulting in such extensive damage that the apartment complex was condemned and closed.

The state-court case was tried against West Hills Park after Home Depot settled with

Boxcars.  The jury answered "yes" to two sets of questions.  The first set of questions asked about

a strict-liability theory of loss of lateral support.  The jury was asked whether there was activity on

the West Hills Park property that was a producing cause of loss of lateral support on the Boxcars

property and damages to Boxcars.  The second set of questions asked whether West Hills Park was

negligent and whether that negligence proximately caused damages to the Boxcars property.  The

jury answered "yes" to both sets of questions.  The jury also determined the damages amount.

Judgment was entered on the verdict, without distinguishing between negligence and strict liability

as the basis for recovery.

Randy Williams, the bankruptcy trustee for West Hills Park, sued Home Depot in this court,

seeking indemnity for the state-court judgment under the parties' 2001 Reciprocal Easement and

Operation Agreement (the "Agreement").  The Agreement states that each "Owner" — West Hills

Park and Home Depot — would indemnify "every other Owner (except for . . . damage resulting

from the tortious acts of such other parties) from and against any damages, liabilities, actions, claims,

and expenses . . . in connection with . . . damage to property arising from or out of any occurrence

in or upon such Owner's Parcel, or occasioned wholly or in part by any act or omission of said

Owner . . . ."  (Docket Entry No. 43, Ex. A, at 16).  The Agreement did not state that an Owner

would be indemnified for damages arising from its own negligence or strict liability.

In summary-judgment motions and in the bench trial held in this case, Home Depot argued

that it could not be required to indemnify West Hills Park.  Home Depot emphasized that the state-

court jury found West Hills Park both negligent and strictly liable.  Home Depot argued that the

absence of an express provision allowing indemnity for a party's own negligence or strict liability,

and the presence of the bar on indemnity for a party's tortious acts, defeat any contractual indemnity

2

obligation. Home Depot argued that the jury verdict and judgment in the underlying case answered the indemnity question in this case, based on the express-negligence doctrine and preclusion.

West Hills Park responded that it was not seeking indemnity for its own conduct and that the express-negligence doctrine did not apply. Instead, West Hills Park argued that it was seeking indemnity for the conduct of Home Depot that gave rise to the damages verdict and judgment in the state court. According to West Hills Park, a review of all the evidence, including the transcript of the state-court trial, established that no act or omission by West Hills Park was negligent or a proximate cause of the Boxcars damages. West Hills Park took the position that despite the jury finding and judgment of negligence in the state court, it was Home Depot's conduct, not West Hill Park's conduct, that was negligent and proximately caused the Boxcars damage. West Hills Park also took the position that despite the jury finding and judgment that there was activity on its land that was a producing cause of loss of lateral support and damages to Boxcars, Home Depot was responsible.

In response, Home Depot argued that the state-court jury verdict established that West Hills Park had committed acts or omissions that were negligent and proximately caused the Boxcars damages, and that there had been activity on West Hills Park's land for which West Hills Park was strictly liable and which was a producing cause of Boxcars damages. Home Depot argued that the jury verdict and judgment precluded contractual indemnity under the Texas express-negligence rule.

In this court, the parties stipulated that an agent or contractor of Home Depot performed the excavation work on both the Home Depot and the West Hills Park tracts adjoining the Boxcars land. This court initially denied summary judgment for Home Depot and granted it for West Hills Park, but later granted in part Home Depot's motion for reconsideration. (Docket Entry No. 29). The

court found the summary-judgment record inadequate to show that, as a matter of law, West Hills Park was, or was not, entitled to indemnity from Home Depot for the state-court judgment.

On November 16, 2012, Home Depot filed a second motion for summary judgment. (Docket Entry No. 43). Home Depot largely reasserted the arguments that the state-court jury verdict precluded West Hills Park from arguing that it was not negligent or strictly liable and that the express-negligence doctrine barred the indemnity claim. Home Depot also sought leave to amend so that it could raise the affirmative defense of waiver. (Docket Entry No. 63). At a motion hearing on February 15, 2013, the court denied both the motion for leave to amend and the second motion for summary judgment. (Docket Entry No. 70, at ¶ e).

Having denied the parties' cross-motions for summary judgment, this court held a bench trial. (Docket Entry No. 82). The record included the transcript and the exhibits in the underlying state-court trial. The evidence and arguments at the bench trial focused on whether West Hill Park's own acts or omissions caused the damage to the adjoining Boxcars property. Home Depot stipulated pretrial, and conceded at trial, that "[a] Home Depot contractor or sub-contractor performed the WHPJV Excavation and the Home Depot Excavation." (Docket Entry No. 41, at ¶ e). The parties presented evidence and argument on activities that West Hills Park engaged in that may have contributed to the damages to the Boxcars land and apartment complex. The focus was on clearcutting trees; excavating and grading the land; failing to give notice to Boxcars of the  work; and failing to conduct studies on the effect the clearcutting, excavation, and grading would have on Boxcars's adjacent land. At trial, Home Depot also reasserted its arguments that West Hills Park could not recover on its indemnity claim because the state-court jury found West Hills Park negligent and strictly liable, and that the parties' Agreement did not expressly require Home Depot to

indemnify West Hills Park for its own negligence or strict liability.

In the bench trial, West Hills Park presented testimony from Tom Curtis, a 50 % owner in West Hills Park, and Rick Conlin, an expert retained by West Hills Park. Both had testified in the state-court trial. Conlin had been retained by Boxcars to testify against West Hills Park in the state court trial. In this court's bench trial, Conlin testified for West Hills Park against Home Depot.

Based on the record, including the evidence at the bench trial and the state-court trial transcript and exhibits, this court finds and concludes that Home Depot is not contractually required to indemnify West Hills Park for the damages awarded against West Hills Park in the state court. Based on the findings and conclusions set out in detail below, this court enters final judgment denying West Hills Park's indemnity claim.[1]

## II.    Factual and Procedural Background and Findings of Fact

In 2001, West Hills Park sold 12.3 acres of land in Huntsville, Texas to Home Depot. West Hills Park kept some of the land, including what is referred to as Pad Site 3. West Hills Park and Home Depot were to develop a shopping center on these two contiguous tracts. A new Home Depot store was to anchor the shopping center. Both the Home Depot land and the West Hills Park land adjoined the Boxcars property.

In connection with the land sale and development, West Hills Park and Home Depot executed a Reciprocal Easement and Operation Agreement ("Agreement"). Section 4.1 of the Agreement provides as follows:

> Each Owner shall indemnify, defend, save and hold every other Owner, tenant, and occupant of the Center harmless (except for loss or damage resulting from the

---

[1] Any findings of fact that are more properly conclusions of law are so deemed. Any conclusions of law that are more properly findings of fact are so deemed.

tortious acts of such other parties) from and against any damages, liabilities, actions, claims, and expenses (including attorneys' fees in a reasonable amount) in connection with the loss of life, bodily injury, personal injury and/or damage to property arising from or out of any occurrence in or upon such Owner's Parcel, or occasioned wholly or in part by any act or omission of said Owner, its tenants, agents, contractors, employees, or licensees.

(Docket Entry No. 43, Ex. A, at 16).

In 2001 and 2002, the West Hills Park tract and the Home Depot tract were both cleared, graded, and excavated. The parties stipulated, and this court finds, that Home Depot's contractors or subcontractors performed the excavation. (Docket Entry No. 41, at ¶ e). Home Depot excavated approximately 10 to 15 feet of earth along the length of the property line separating the Home Depot and West Hills Park tracts from the adjacent Boxcars land. The excavation was on the West Hills Park-owned property as well as on the Home Depot property. Home Depot also excavated and installed drainage and sewer systems on both tracts of land, benefitting both Home Depot and West Hills Park.

Boxcars owned and operated the Parkwood Place Apartments on its land adjacent to the Home Depot and West Hills Park tracts. The apartment complex consisted of 15 buildings, 12 of which were used for housing, parking lots, and a pool. In its state-court suit against defendants that included West Hills Park and Home Depot, Boxcars sought damages for negligence and for strict liability, the latter claim based on a loss of lateral support for its land resulting from the development of the Home Depot and West Hills Park tracts. (Docket Entry No. 43, Ex. B). Boxcars sought the loss in market value because the land could no longer be used for its intended purpose, and the loss in income from the uninhabitable apartments. Home Depot settled with Boxcars without admitting

fault. (Docket Entry No. 43, Ex. C).[2]  Boxcars tried its claims against West Hills Park.  There was no designation of a responsible third party in the jury trial, but there was testimony and evidence as to the roles of Home Depot and West Hills Park.

The jury heard testimony from Tom Bevans, an owner of the Parkwood Place apartment complex.  The complex was built in 1972.  Bevans testified that when Boxcars bought the property in 1998, and until the development of the West Hills Park and the Home Depot tracts, there were no significant problems with cracks or with the building foundations.  (Docket Entry No. 36, Boxcars Trial Transcript at Vol. 2, p. 7, l. 9-12).

Bevans testified that he saw extensive clearcutting of trees, estimating that over one to two thousand trees were "taken out" of West Hills Park's Pad Site 3.  (*Id.* at Vol. 2, p. 12, l. 1-5).  At some later point, a very large area along the property line between the Home Depot and West Hills Park parcels on one side, and the Boxcars property on the other, was excavated.  Bevans testified in the state-court trial that the excavation cut along the Boxcars property line "was very long and it was very deep." (*Id.* at Vol. 2, p. 14, l. 10).  He testified that it was "like a bomb had gone off and just taken out a whole chunk of earth." (*Id.* at Vol. 2, p. 14, l. 11-12).  Bevans's testimony was consistent with the parties' definition of "excavation" as removing approximately 10 to 15 feet of earth along the entire length of the northern boundary line of the Boxcars apartment complex.  Bevans further stated that there was heavy erosion along the entire cut line between the Boxcars property and the West Hills Park and Home Depot properties.  (*Id.* at Vol. 2, p. 17, l. 1-3).

Beginning in 2002, after the clearing, grading, and excavation on the Home Depot and West

---

[2]  West Hills Park Joint Venture, J.A. Development, LLC, and Curtis Development, LLC stipulated that they were jointly and severally liable for any damages awarded. Tom Curtis was initially a defendant but was nonsuited during the trial.

Hills Park properties, Bevans saw significant damage to the apartment buildings and other structures on its land. The damage included cracked brick facades, cracked walls, buckled floors, separated sheet rock between the walls and ceilings, leaning balconies, roof leaks, and foundation damage. (*Id.* at Vol. 2, p. 18, l. 24; p. 27, l. 22 - p. 28, l. 2; p. 49, l. 15). The results included a significant drop in occupancy through February 2005, when the extent of damage led to the property's condemnation. (*Id.* at Vol. 2, p.27, l. 17-19). The remaining tenants had to move out within 60 days after the condemnation. Bevans testified that the damage to the apartment buildings could not feasibly or economically be repaired and that if repairs were made, they either would not fix the problems or the problems would recur. (*Id.* at Vol. 2, p.26, l. 22 - p. 27, l. 15). His testimony provided factual support for the expert testimony on damages that followed and was consistent with the jury's award.

Bevans testified that he had no advance notice from either West Hills Park or Home Depot about the clearcutting or the excavation on the tracts each owned. (*Id.* at Vol. 2, p.13, l. 23 - p. 14, l. 2). He also testified that as the problems in the Boxcars properties became evident, he complained to Tom Curtis at West Hills Park, with no results until a retaining wall was built much later. Bevans referred to Curtis as the representative of the "developer," and testified that Curtis did not deny West Hills Park's involvement in, or responsibility for, the work done to develop the properties. (*Id.* at Vol. 2, p. 35, l. 3). Nor did Curtis tell Bevans to talk to Home Depot because it was solely responsible for the work.

Shellee Adkins, an assistant property manager for Boxcars, testified in the state-court trial about the damage she saw in the complex beginning in 2002. She described seeing a large cavity in the side of the excavation cut between the Boxcars property line and the West Hills Park property,

Pad Site 3. (*Id.* at Vol. 2, p. 55, l. 1-25; Boxcars Trial Ex. 6). According to Adkins, the cavity was located approximately five feet up from the ground. She testified that there was a steady flow of sediment and water coming from the excavation cut. (*Id.* at Vol. 2, p. 55, l. 1-25, p. 56, l. 1-25). At the location of the deep excavation cut on Pad Site 3, she saw a constant drainage and flow of sediment and water. (*Id.* at Vol. 2, p. 56, l. 24-25).

Tom Curtis, a 50 % owner of West Hills Park, testified in the start-court trial about the work done beginning in 2000 to develop the tracts adjacent to the Boxcars parcel. When Home Depot approached West Hills Park about the land purchase, Curtis was told that he was to be the "developer" with Home Depot. He testified that Home Depot did the excavation and the grading on both its land and on the West Hills Park parcel, Pad Site 3. Consistent with the parties' later stipulation, Curtis testified in the Boxcars trial and in the bench trial in this court that West Hills Park did not contract with or pay Home Depot's contractor to perform the excavation work. (*Id.* at Vol. 3, p. 15, l. 7-11).

Curtis testified in the state-court trial that West Hills Park — not only Home Depot — removed trees from Pad Site 3. (*Id.* at Vol. 2, p. 64, l. 18). In the bench trial, however, Curtis, now testifying against Home Depot rather than defending against Boxcars, changed his testimony. He blamed a prior owner of Pad Site 3 for removing the trees, a fact he had not mentioned in his testimony in the state-court trial against Boxcars. (Docket Entry No. 82, Bench Trial Tr., at 49). Although it is unclear precisely when and how many trees were removed, when Curtis was testifying for West Hills Park in the state-court case, he admitted that West Hills Park was responsible for removing trees from its property before the sale to Home Depot. He denied that fact when he testified against Home Depot in the bench trial.

The court finds that Curtis was not credible when he testified in the bench trial that West Hills Park had no role in removing trees from its property.  This court finds that West Hills Park did remove a large number of trees from its property, before and in addition to Home Depot's removal of trees to prepare for the excavation work on both the Home Depot and the West Hills Park parcels.

There were three other witnesses at the state-court trial. One, Boxcars's engineering expert M. Frederick Conlin, Jr., also testified in the bench trial in this court. Conlin concluded in the state-court trial that excavation of the West Hills Park property caused a loss of lateral support to the Boxcars property.  Conlin concluded that this loss of lateral support was a producing cause of damages to the Boxcars apartments. (*Id.* at Vol. 3, p. 75).  He testified that the excavation work on both the Home Depot and the West Hills Park properties lowered the ground water level under the Boxcars property, causing a loss of soil and densification of the soil, which in turn caused a lack of lateral support and damaged the buildings.  He testified that the water level was lowered five to eight feet. (*Id.* at Vol. 3, p. 61).

In the state-court trial, Conlin also testified that clearcutting the trees by itself contributed to lowering the ground water level on the Boxcars property, although the excavation had a greater impact. (*Id.* at Vol. 3, p. 62). Conlin testified that West Hills Park, as a developer of the project and as the owner of land on which clearcutting and excavation took place, had the obligation to study the effect of clearcutting or excavation on neighboring property and to give notice to the owner of the neighboring property that such work would take place. (*Id.* at Vol. 3, p. 43). Conlin testified that failing to do so would constitute negligence on West Hills Park's part. (*Id.* at Vol. 3, p. 44). He testified that the purpose of the notice was to allow neighboring landowners early detection of signs of changes in the property condition from the work, including through the installation of monitoring

devices to identify the changes.

In the bench trial, when Conlin changed from a Boxcars witness testifying against West Hills Park to a West Hills Park witness testifying against Home Depot, his testimony changed. In this court, he issued a supplemental expert report in which he stated that West Hills Park had no obligation to study the impact clearcutting, excavating, and grading would have on the Boxcars property or to notify Boxcars of the work.  (Docket Entry No. 60, Ex. 1).  He also testified that failing to conduct or obtain studies or give notice to Boxcars did not cause or contribute to the Boxcars damages.  (*Id.*).

Conlin testified that when in the state-court trial he said that the "developer" had the obligation to study how planned clearcutting and excavation work on its property would impact neighboring property, and to give notice of the work to the owner of neighboring property, he meant the entity controlling the work.  He testified that now that he understood that Home Depot, not West Hills Park, was the entity controlling the excavation and related work, he no longer believed that West Hills Park was negligent for failing to study the impact of the work on its property or its development or notify Boxcars before the work began.  He testified that if West Hills Park was not the "developer of the Home Depot tract and/or did not materially participate in the excavation or clearcutting of trees, then [West Hills Park] was not negligent for failing to give notice."  (*Id.* at 2). In the bench trial, Conlin testified that he placed the responsibility for doing studies and giving notice on Home Depot.  He also expressed the legal opinion that the failure to give notice cannot be the basis for a loss of lateral support finding because a failure to give notice is not an activity on the West Hills Park land.  (*Id.*).

Conlin's changed testimony was not credible.  He clearly stated in his state-court testimony

that when he said the "developer" was responsible for notice and studying in advance the effect of

clearcutting and excavation, he was referring to West Hills Park.  West Hills Park was a developer

and was the owner of one of the land tracts on which clearcutting and excavation were done.  Conlin

changed his testimony in the bench trial to state that by "developer," he meant only that whoever was

doing construction activities on site was responsible for notice and studies, and that he was under

the mistaken impression at the Boxcars trial that West Hills Park was partly responsible for

construction activities.  (Docket Entry No. 82, Bench Trial Tr., at 82).  His change in testimony is

not credible.  During cross-examination in the state-court trial, West Hill Park's lawyer challenged

Conlin's testimony that West Hills Park was a developer, pointing out that Home Depot was the

entity doing the excavation and related work.  (Docket Entry No. 36, Boxcars Trial Transcript at Vol.

3, p. 77-83.)  Conlin maintained his position that as a developer of the project and as the owner of

property that it knew was to be clearcut, excavated, and graded, West Hills Park had the duty to

obtain studies and give notice to the adjoining property owner.  (*Id.* at Vol. 3, p. 84-85).  Conlin's

testimony in the bench trial that the failure to conduct or obtain studies or give notice did not cause

damage to Boxcars is inconsistent with his testimony in the state-court trial that the purpose of notice

is to allow early identification of problems from the neighboring development work, including by

installing monitoring devices to detect signs of changes.  (*Id.* at Vol. 3, p. 43).

  The witnesses in the state-court trial included James W. Gartrell, Jr. an engineer testifying

for Boxcars.  Gartrell concurred that the excavation changed the water level under the Boxcars

apartments.  He testified that the deep cut and excavation on West Hills Park's property was a cause

of the loss of lateral support to the Boxcars property.  (*Id.* at Vol. 3, pp. 105, 136, 137 & 138).

Gartrell also testified that West Hills Park and Home Depot both benefitted from the excavation and

related work on the Home Depot and the West Hills Park parcels and from the installation of the sewer and drainage systems. Gartrell testified that as a participant in the development and as the owner of land on which clearcutting and excavation took place, West Hills Park had the duty to obtain engineering studies into the impact such work would have on adjoining property and to give notice of the work to the owners of that property. (*Id.* at Vol. 3, p. 103-05). Gartrell testified that the large excavation cut on Pad Site 3—where Adkins had seen the water and sediment flowing out—contributed to causing the "dewatering" of the Boxcars property. Gartrell testified that the excavation cut on Pad Site 3 was such a significant factor that even if it was the only excavation, it would have caused the loss of lateral support on the Boxcars property, although more slowly than the combined effects of the excavation on both the Home Depot and West Hills Park properties. (*Id.* at Vol. 3, p. 134). Gartrell also testified that rebuilding or repairing the Boxcars apartments was not economically feasible, because of the extensive damage, the likelihood of continued soil movement, and the building code requirements now in place. (*Id.* at Vol. 3, p. 106-113).

The remaining witness in the state-court trial, Andrea Farenthold, Boxcars's expert in real estate appraising, testified about damages using several approaches and comparisons. (*Id.* at Vol. 3, p. 142-195). She took into account the diminution of value of the Boxcars property, the loss of income and the cost of razing the fourteen buildings to make the property raw land. Fahrenthold testified that lost market value was $2,637,705.00 and lost income was $618,804.00. (*Id.* at Vol. 3 at p.174-176 (lost market value); p. 190-191 (lost income)).

As noted, the jury was not asked to make any determination of the comparative fault of West Hills Park and the settling party, Home Depot. The jury questions and answers were as follows:

Question No. 1

Was activity, if any, on West Hills Park Joint Venture's real property a producing cause of a loss of lateral support to the Boxcar Properties, Ltd.'s property?

"Loss of lateral support" requires that the:

> a. West Hills Park Joint Venture be an adjacent property owner;

> b. The loss of lateral support occurs from some activity on the West Hills Park Joint Venture's property; and

> c. The loss of lateral support is a producing cause of Boxcars Properties, Ltd.'s damages.

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more th[a]n one producing cause.

(Docket Entry No. 43, Ex. F at 4).   The jury answered "Yes." (*Id.*)

Question No. 2

Did the negligence, if any, of West Hills Park Joint Venture proximately cause the occurrence in question?

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances.

"Ordinary care" means the degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause to which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

(*Id.* at 5).  The jury answered "Yes." (*Id.*)

Question No. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Boxcar Properties, Ltd. for its damages, if any, for (a) the difference in market value of Boxcar Properties, Ltd., land and improvements immediately before and the value after the damages, if any, to the land and improvements and (b) loss of use of property resulting from the occurrence in question.

Consider the elements of damages listed below and none other. Consider each element separately.  Do not award any sum of money on any element if you have otherwise, under some other element awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include interest on any amount of damages you find.

(*Id.* at 6).  The jury awarded Boxcars $2,637,705 for the difference in market value and $618,804 for loss of use.  (*Id.*)

The Walker County court entered judgment finding West Hills Park liable to Boxcars  for negligence that was a proximate cause of Boxcars's damages, and finding that there was activity on West Hills Park's property that was a producing cause of loss of lateral support on Boxcars's adjacent property and the resulting damages.  (Docket Entry No. 43, Ex. E).  The jury awarded damages for loss of market value in the amount of $2,637,705 and loss of use of property in the amount of $618,804.  With a settlement credit of $867,500, the net damages were $2,389,009.00, plus prejudgment interest of $365,082.62, postjudgment interest at 7.5% per annum, and court costs. (Docket Entry No. 43, Ex. E).  Postjudgment interest accrued from March 9, 2006 to August 17, 2006, when West Hills Park declared bankruptcy[3]; at $565.91 per day for 161 days, the postjudgment

---

[3]  West Hills Park filed for Chapter 11 bankruptcy on August 17, 2006. Randy W. Williams was appointed trustee of the West Hills Park bankruptcy estate. On March 7, 2010, the trustee filed a noncore adversary proceeding against Home Depot seeking contractual indemnity on behalf of West Hills Park for the Boxcars Judgment.  On April 27, 2010, the trustee sought and the bankruptcy court approved the employment of special counsel on a contingency-fee basis and approved a Contingent Fee Contract to

interest is $91,111.51.  The total is $2,845,203.13.

The issues before this court are whether, despite the negligence and strict liability jury verdict and judgment against West Hills Park in the state court, and despite the absence of any agreement by Home Depot to indemnify West Hills Park for its own negligence or strict liability, Home Depot is contractually obligated to indemnify West Hills Park.  West Hills Park asserts that the evidence shows that Home Depot's conduct resulted in the negligence and strict liability verdict and judgment. West Hills Park asserts that the indemnity it seeks is for Home Depot's conduct.  Home Depot responds that the jury's findings and judgment that West Hills Park was negligent and strictly liable, which defeat Home Depot's contractual indemnity obligation, primarily arose from West Hills Park's own acts or omissions in the following areas:  clearcutting trees; failing to obtain studies of the effect the development work would have on the Boxcars property; and failing to give notice to Boxcars of that work.

The arguments and response are addressed below.

## A.    Clearcutting

There was expert testimony in the Boxcars state-court trial that clearcutting trees before the excavation work contributed to the loss of lateral support on the Boxcars property.  In the Boxcars state-court trial, Bevans testified that there had been extensive tree removal by West Hills Park before the sale to Home Depot. (Docket Entry No. 36, Boxcars Trial Transcript at Vol. 2, pp. 11-12). Curtis similarly testified that West Hills Park did not do excavation work on Pad Site 3— Home

---

prosecute the claims against Home Depot.  The bankruptcy court filed a Report and Recommendation for Withdrawal of Reference to this Court after Home Depot requested a jury trial and withheld consent to allow the bankruptcy court to make a final determination and enter judgment.  On August 24, 2010, this court entered an order granting the withdrawal of reference.  The case was then transferred to this court.

Depot did that work—but West Hills Park did remove a large number of trees from that tract.  (*Id.* at Vol. 2, p. 64 (Curtis testimony).  In the bench trial, Curtis testified differently than he had in the state-court case.  He testified in the bench trial that the prior owner of the tract sought and received West Hills Park's permission to remove timber before she sold to West Hills Park.  (Docket Entry No. 82, Bench Trial Tr., at 49).  According to Curtis, timber harvesting took place, but not at West Hills Park's direction and not after West Hills Park sold property to Home Depot.

As noted, Curtis's testimony is not credible.  The credible evidence shows that West Hills Park—not just Home Depot—did remove a large number of trees from its property.  But it does not appear that West Hills Park did such extensive tree removal as to amount to clearcutting.  Exhibit 4-48 from the bench trial is an aerial photograph of the property at issue.  The parties do not dispute that Exhibit 4-48 shows the overall property when West Hills Park sold the property to Home Depot.  (*Id.* at 62-63).  Exhibit 4-48 shows that there had not been "clearcutting" of trees on the property at that time.  Additionally, after Boxcars filed its suit, Home Depot filed suit in the United States District Court for the Northern District of Texas against National Fire Insurance Company of Hartford ("NFIC"), alleging that the insurer had failed to comply with its contractual obligations to defend Home Depot in the Boxcars litigation.[4]  In its suit against NFIC, Home Depot alleged that Rockwell was the general contractor for the development work on the property and that Rockwell subcontracted with Express Site to do the excavation and grading.  (*See* Docket Entry No. 60, Ex. 3 at 15).  Under the contract between Express Site and Rockwell, Express Site was to "clear site of trees, scrape vegetation, cut/shift/compact onsite materials to within 1/10th of new elevations, provide building pad per soils report, haul off all excess materials, final dress up after all concrete

---

[4] *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06-cv-00073-D (N.D. Tex.).

work complete." (*Id.* at 26).

The court finds that West Hills Park removed or authorized the removal of a large number of trees from Pad Site 3, but not to such an extent as to constitute clearcutting and not to such an extent as to be a contributing cause independent from the excavation to the loss of lateral support on the adjoining Boxcars property.

> **B.**  **Failing to Obtain Studies on the Impact of Clearcutting, Excavating, and Grading on the Adjoining Property and Failing to Give the Owner Notice of that Work**

In the state-court trial, the parties actually litigated the issues of whether West Hills Park was negligent for failing to conduct studies of the impact clearcutting, excavating, and grading would have on neighboring land and for failing to give notice to the owner of that land. The issues were fully and fairly litigated, and their resolution was essential to the verdict and judgment.

West Hills Park's counsel attempted to elicit testimony that Home Depot alone was responsible for all aspects of the clearcutting, excavation, and grading work by cross-examining witnesses who testified for Boxcars at the state-court trial. It was undisputed, and later stipulated, that West Hills Park had no direct involvement in the excavating and grading work other than allowing Home Depot to pile excavated dirt on part of Pad Site 3. The jury nevertheless found that West Hills Park was negligent and strictly liable. There was testimony that West Hills Park had extensive experience as a developer; knew about and benefitted from the development work on both the Home Depot and West Hills Park tracts; removed or authorized the removal of a large number of trees from its own tract; failed to obtain studies on the impact of the clearcutting, excavating, and grading on Boxcars's adjacent land; gave no notice to Boxcars; and that the deep excavation cut on the West Hills Park tract produced a constant flow of water and sediment that itself caused a loss of

lateral support on the Boxcars property.

Conlin testified in the state-court Boxcars trial that as a developer and an owner of land on which clearcutting and excavation took place, West Hills Park had a duty to obtain studies of the impact on adjacent land and give notice to the adjacent-land owners. (Docket Entry No. 36, Boxcars Trial Transcript at Vol. 3, pp. 83, 85, 86). Conlin testified that the notice should have been given before the work began. (*Id.* at Vol. 3, p. 43). Conlin testified that the purpose of such notice was to allow early detection of any impact of the work, including through the installation of monitors. Conlin's effort in this court to change his testimony to shift responsibility for studies or notice from West Hills Park to Home Depot was not credible. And there is evidence that West Hills Park had sufficient knowledge of the development plans to know that clearcutting and major excavating and grading would be required, causing significantly change to the elevations. Curtis testified in this court that he approved site plans prepared for Pad Site 3 and that West Hills Park may also have been in possession of grading plans for the site. While the site plans were for the purpose of platting the property rather than for excavation, (Docket Entry No. 82, Bench Trial Tr., at 57), it was clear that clearcutting, excavating, and grading to make the land level would be required and would be significant.

This court also finds that although West Hills Park did not have specific responsibility for planning, contracting, or executing the clearcutting, excavation, and grading work, West Hills Park had the preliminary and the final site plans that showed the work, including the work on Pad Site 3. As one of the project's developers and an owner of one tract being developed, West Hills Park knew that the development included clearcutting, excavating, and grading, and installing the drainage and sewer systems. The court also finds that West Hills Park gave specific authorization for Home

Depot to stockpile dirt from the excavation on the West Hills Park parcel in exchange for grading that parcel with no charge. (Docket Entry No. 36, Boxcars Trial Transcript at Vol. 3, p. 15).

This court finds that there is credible evidence showing that West Hills Park failed to conduct or obtain studies of the impact the clearcutting, excavating, and grading work would have on the Boxcars property and to give notice to Boxcars. Such notice would allow monitors to be installed and other steps to be taken to detect early signs of the impact the development work would have. There is credible evidence showing that these failures breached West Hills Park's duties as a developer of the project, as the owner of part of the land on which the development and work took place, and as the owner of the tract where, shortly after excavation, there was a "constant flow" of water and sediment from the deep excavation cut. This court also finds that there is credible evidence showing that these failures were a proximate cause of damage to the Boxcars property, in part because there was no opportunity to use monitors or take other early-detection steps. The court finds that there is credible evidence showing that West Hills Park's own conduct was negligent and a proximate cause of damage to Boxcars, as the Boxcars jury found.

In the bench trial, West Hills Park argued that its failure to conduct or obtain studies on the effect that clearcutting, excavating, and grading would have on Boxcars's property and its failure to notify Boxcars of the development work could not support the strict liability verdict because these omissions were not "activities on the land." (*Id.* at 110). In the state-court trial, the jury was specifically asked, and found, that activities on West Hills Park's land was a producing cause of loss of lateral support to Boxcars's property and the resulting damages. (Docket Entry No. 42, Ex. F, at 4). West Hills Park's present argument assumes that this issue was critical to the judgment of strict liability for loss of lateral support.

Not only did the jury find that the loss of lateral support resulted from activity on West Hills Park's land, the record supports that result.  The activity at issue is an omission.  What did West Hills Park not do?  It did not study its own land to determine the effects on adjacent land of the development project it knew would require clearcutting, extensive excavation, and grading.  Nor did it notify the adjacent land owner of those activities.  The testimony showed that one result was the loss of the opportunity to put monitors into place or take other steps to detect early signs of the construction's effects.  West Hills Park's argument that such an omission cannot be an activity on land proves too much.  This court finds that the record supports the jury's verdict that West Hills Park's own omissions were activity on its land and a producing cause of the loss of lateral support to the Boxcars property.

## C.     Damages

Texas law supports a recovery of loss of market value when the real estate has been altered or damaged so that it no longer exists in the condition just prior to the acts.  *See B. A. Mortgage Co., Inc. v. McCullough*, 590 S.W.2d 955, 956 (Tex Civ. App. - Fort Worth 1979, no writ).  Boxcars was entitled to and properly sought recovery for loss of market value in the real estate's natural condition.  On the basis of Boxcars trial verdict and judgment, this court finds that the damages total is $2,845,203.13, not including prejudgment interest.  Prejudgment interest began accruing on March 8, 2010.  At a rate of 5 % per annum — the Texas statutory rate for prejudgment interest on breach of contract claims — prejudgment interest on the $2,845,203.13 Boxcars judgment is $389.754 per day.  As of September 30, 2011, the prejudgment interest was $222,939.28, based on 572 days.  Prejudgment continues to accrue.  Postjudgment interest is 5% per annum based on the Texas statutory interest rate for postjudgment interest on money judgments.

### III.   Legal Analysis and Conclusions of Law

West Hills Park argues that the state-court judgment is not preclusive and that because the actions of Home Depot or its agents, not of West Hills Park, caused West Hills Park to be found negligent and strictly liable, the fair-notice doctrine does not apply.  This court initially ruled that West Hills Park was entitled to contractual indemnity on the basis that the state-court verdict and judgment by themselves did not give rise to issue preclusion preventing West Hills Park from showing that Home Depot's negligence and strict liability, not its own, caused the Boxcars property damage; and second, the record evidence showed that the excavation work was performed by a Home Depot contractor.  (Docket Entry No. 14).  This court's later ruling granting Home Depot's motion for reconsideration in part stated that "the summary-judgment ruling that, on this record, the express-negligence doctrine does not preclude West Hills Park from seeking indemnity from Home Depot remains in place."  (Docket Entry No. 29, at 1).  This court explained in making these rulings that "[t]he record here does not include the evidence presented at [the Boxcars] trial.  The record in this case about the state-court case consists only of Boxcars's original petition, the pretrial severance and nonsuit of Home Depot, the jury questions and answers, and the judgment."  (*Id.* at 8).

The present record is far different.  The transcript and exhibits from the state-court trial are in evidence.  The state-court trial record, the additional evidence introduced in this court, and the applicable law lead this court to find and conclude that Home Depot is not contractually required to indemnify West Hills Park for the state-court judgment.  The result is supported by the findings and conclusions that it was West Hills Park's own conduct that resulted in the negligence and strict liability verdict and judgment against it in the state court, and by the preclusive effect of that judgment.

### A.      The Express-Negligence Doctrine

The Texas express-negligence doctrine requires contractual indemnification clauses to state clearly and expressly the indemnitor's obligation to pay for damages arising out of the indemnitee's own negligence.  "Because indemnification of a party for its own negligence is an extraordinary shifting of risk, [the Texas Supreme Court] developed fair notice requirements which apply to [indemnification] agreements." *Dresser Indus., Inc. v. Page Petrol., Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

Under the express-negligence doctrine, a party is not required to indemnify another party for the other party's negligence unless the contract expressly creates that obligation in specific terms. *Fisk Electric Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). The expression "must appear in the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Dresser Indus.*, 853 S.W.2d at 508; *Atl. Richfield Co. v. Petrol. Personnel, Inc.*, 768 S.W.2d 724, 725 (Tex. 1989) (Fair notice "require[s] scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence."); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987).  The contract language providing for indemnification must be an "unmistakable, unambiguous and explicit statement within the four corners of the contract." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 611 F. Supp. 2d 654, 664 (S.D. Tex. 2009).   "General, broad statements of indemnity" are not enough to transfer responsibility. *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 461 (5th Cir. 2002).  The specific type of liability and the parties to which that liability attaches must be clearly stated.  The type of liability cannot be inferred from the inclusion or exclusion of other types. *Id.* at 465.  The contract must include the actual words. *Quorum*, 308 F.3d at 467; *Lee Lewis*

*Constr., Inc. v. Harrison*, 64 S.W.3d 1, 21 n. 13 (Tex. App. — Amarillo 1999) *aff'd*, 70 S.W.3d 778

(Tex. 2001); *Monsanto*, 764 S.W.2d at 296.

The Texas Supreme Court  has applied the express-negligence doctrine in strict liability

cases.  *Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455,

458 (Tex. 1994); *Dorchester Gas Corp. v. Am. Petrofina, Inc.*, 710 S.W.2d 541, 543 (Tex. 1986).

As in the express negligence cases, the strict liability cases have emphasized the unfairness of

making an indemnitor responsible for an indemnitee's actions unless the indemnitor has expressly

agreed.  *See, e.g.*, *Houston Lighting & Power*, 890 S.W.2d at 458 (reasoning that "the requirement

that parties expressly state their intent to cover strict liability claims prevents the injustice that may

occur when an innocent party incurs tremendous costs because of another's strict statutory liability

[such as] when a party, itself not at fault, lacked fair notice of its potential liability under a less-than-

specific indemnity clause").

The express-negligence doctrine does not apply to indemnity for liability that is caused by

a person or entity other than the indemnitee.  *Ethyl*, 725 S.W.2d at 707–708; *MAN GHH Logistics*

*GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43 (Tex. App. — Houston [14th Dist.] 1993, no writ)

(finding the express negligence rule did not apply because "appellants are not seeking to recover for

their own negligence"); *Martin K. Eby Constr. Co., Inc. v. One Beacon Ins. Co.*, Nos. 08-1250-

WEB, 08-2392-WEB, 2011 WL 721545, at *7 (D. Kan. Feb. 22, 2011) (applying Texas law).  The

courts have emphasized that the Texas Supreme Court applied the fair-notice doctrine only in "cases

that deal[t] with an indemnitee seeking recovery for actions arising out of its own negligence and,

therefore, [were] subject to the express-negligence doctrine."  *Tex. Dep't of Transp. v. Metro.*

*Transit. Auth. of Harris Cnty.*, No. 01-01-00613-CV, 2002 WL 724927, at *2 (Tex. App.—Houston

[1st Dist.] Apr. 25, 2002, no pet.). "Texas courts have not departed from the application of the fair-notice doctrine, which has only been applied to cases in which indemnitee is seeking to shift liability for its own negligence." *Eby Constr.*, 2011 WL 721545, at *6.

The Agreement between West Hills Park and Home Depot expressly excludes indemnity for "loss or damage resulting from the tortious acts of such other parties." (Docket Entry No. 43, Ex. A, at 16). The Agreement excuses Home Depot from indemnifying West Hills Park for its own "tortious acts." In addition to the fair-notice rule and the absence of language explicitly shifting liability for a party's own negligence or strict liability, the Agreement explicitly provided that liability would *not* shift to cover damages for the indemnitee's tortious acts. If West Hills Park was found to have committed a "tortious act" that was a cause of Boxcars's damages, and that finding is preclusive, West Hills Park cannot recover contractual indemnity.

### B.    Issue Preclusion

One issue is "whether the state-court judgment precludes West Hills Park from litigating its contention that Home Depot or its agent is liable for the damage to the Boxcars property, and if not, whether . . . the record establishes, as a matter of law, that Home Depot or its agent caused the damage." (Docket Entry No. 14, at 10). A related issue is whether the record shows that West Hills Park committed "tortious acts." The full record shows that the judgment of negligence and strict liability are entitled to preclusive effect.

This court previously ruled that issue preclusion did not apply. The opinion explaining that result included some statements that require correction. As explained more fully below, this court concludes that the Boxcars verdict and judgment bars West Hills Parks's contractual indemnity claim. The state-court record demonstrates that West Hills Park actually litigated its claims that it

could not be found negligent or strictly liable because Home Depot was solely responsible for the development work; West Hills Park had no knowledge about or responsibility for conducting studies or giving notice before the development work; and the failure to do so could not be activities on the land.   The jury rejected West Hills Park's claims by finding that it was both negligent and strictly liable.   The verdict and judgment also establish that West Hills Park committed "tortious acts." The judgment meets the standard for issue preclusion.

### 1.    The Legal Standard for Issue Preclusion

In Texas, issue preclusion requires that the party against whom preclusion is asserted must have been a party (or in privity with a party) in the original lawsuit. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).  The facts sought to be litigated in the second action must have been fully and fairly litigated in the first action. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 519 (Tex. 1998).   The facts must also have been essential to the first action's judgment. *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994).

This court stated previously that "the parties [must have been] cast as adversaries in the first action." (Docket Entry No. 29, at 9).  But under Texas law, a party can assert issue preclusion even if it was not a party to the case giving rise to the judgment. *Eagle Props.*, 807 S.W.2d at 721. Mutuality is not required when the party against whom issue preclusion is asserted was a party or was in privity with a party in the underlying suit. *Eagle Props.*, 807 S.W.2d at 721; *see also Kyles v. Garrett*, No. G-03-0053, 2010 WL 3303736, at *3 (S.D. Tex. Aug. 19, 2010) (citing *Trapnell*, 890 S.W.2d at 802, for the rule that "[s]trict mutuality of parties is not required, but the party against whom the doctrine is asserted must be in privity with the party in the first action"); *Video Ocean Grp. v. Balaji Mgmt.*, No. Civ. A H-03-1311, 2006 WL 964565, at *7 (S.D. Tex. Apr. 12, 2006)

(citing *Trapnell*, 890 S.W.2d at 802, for the same rule).  Home Depot can satisfy this requirement because West Hills Park was a party to the Boxcars suit.

This court previously noted the interplay between issue preclusion and the fact that the Boxcars jury found West Hills Park strictly liable and negligent.  Under "Texas law, '[t]he general rule is that there cannot be estoppel by alternative holdings.'" (Docket Entry No. 29, at 9 (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 97 (Tex. App.—Eastland 2010, pet. denied))).  The court also cited the exception to this rule that preclusion can apply when the alternative holdings are appealed and affirmed.  (*Id.* (citing *Johnson & Higgins*)).  The state-court judgment was not appealed.  A review of the state-court judgment, however, shows that the Boxcars jury did not make alternate findings.  The Boxcars jury found West Hills Park liable for the damage to the apartments on the Boxcars property.  Under Texas law, liability for damages to improvements on land requires a finding of negligence against a neighboring property owner.  *See Braxton v. Chin Tuo Chen*, No. 06-10-cv-00134, 2011 WL 4031171, at *5 (Tex. App.—Texarkana Sept. 13, 2011).  The owner's strict liability for loss of lateral support supports recovery only for damages to the plaintiff's land itself.

Here, the  state-court jury found West Hills Park strictly liable for the loss of lateral support to the Boxcars property.  The jury also found West Hills Park negligent and liable for the damage to those apartments.  Under Texas law, West Hills Park could not have been found liable for the damage to Boxcars's buildings if the jury had not found West Hills Park negligent, whether by causing the loss of lateral support or by some other act or omission.  The presence of both findings does not undermine preclusive effect.

Even if the jury's verdict and judgment are characterized as alternative findings, there is an

additional exception that applies in this case.  In *Eagle Props., Ltd. v. Scharbauer*, the Texas

Supreme Court held that when alternate findings are "rigorously considered," they are essential to

the judgment and entitled to preclusive effect even if the judgment is not appealed.  807 S.W.2d 714,

722 (Tex. 1990).  The Texas Supreme Court specifically rejected the rule that alternative holdings

cannot have preclusive effect unless appealed.  *Id.*   Instead, the Court reasoned that "the

abandonment of estoppel for the reason that a prior judgment rests on multiple grounds is

inconsistent with the general rule . . . that a party is only entitled to one full and fair opportunity to

litigate an issue." *Id.* (emphasis added).  West Hills Park's negligence and strict liability for its own

actions, as opposed to Home Depot's, were fully and fairly litigated in the Boxcars lawsuit.  The

legal requirement that West Hills Park be found negligent to be liable for damages to the apartments

from loss of lateral support supports this conclusion.

### 2.      The Issues that Were Conclusively Determined

In the state-court case, the jury was presented, and by its verdict rejected, West Hills Park's

defense that it was not negligent on the basis that Home Depot's activities and omissions, not West

Hills Park's, caused the damage to the Boxcars property.  The jury was presented, and rejected, the

defense that West Hills Park had no obligation to conduct studies of how the development activities

of clearcutting, excavation, and grading would impact adjoining land, and no obligation to give

notice to Boxcars about the development activities.  And the jury was presented, and rejected, West

Hills Park's theory that its activities and omissions were not activities on the land that could give rise

to strict liability for loss of lateral support.  These issues were determined in the state-court trial,

verdict, and judgment. (*See* Docket Entry No. 43, Exs. E & F).

### 3.      Conclusions of Law on Issue Preclusion

The record shows that West Hills Park was a party in the state-court case and is the party against whom preclusion is asserted in this case. The record also shows that the parties to the state-court case fully and fairly litigated: (1) whether West Hills Park's own conduct, as opposed to Home Depot's, was negligent and a proximate cause of the damage to Boxcars; and (2) whether there was activity on West Hills Park's land that made it strictly liable and was a producing cause of the damage to Boxcars. The record also shows that the determination of these issues was essential to the state-court verdict and judgment. The elements of preclusion are met. Based on issue preclusion, West Hills Park cannot claim contractual indemnity from Home Depot, because the preclusive effect of the state-court verdict establishes that West Hills Park is seeking indemnity for its own negligence and strict liability. The express-negligence doctrine precludes indemnity in such a situation. In addition, because the jury found West Hills Park negligent and strictly liable, the Agreement's prohibition on indemnification for a party's own tortious acts bars West Hills Parks's indemnity claim.

### C.      The Issues Tried In This Court

In the bench trial, the parties submitted the state-court trial testimony and exhibits as evidence. The parties also presented additional evidence on West Hills Park's role in clearcutting trees, failing to study the effects the development work on its land would have on adjoining tracts, and failing to give advance notice of that work to the owner of the adjoining tract; and whether West Hills Park's role was negligent, a basis for strict liability, and a cause of any damages to Boxcars. In addition to, and separate from, the preclusive effect of the state-court judgment, the record evidence before this court leads to the finding and conclusion that West Hills Park had an obligation to conduct or obtain studies on the effect the development work on its land would have on adjacent

land, and to give notice of that work to the owner; and that the failures to do so proximately caused damages to Boxcars. In addition to, and separate from, the preclusive effect of the state-court judgment, the record in this court leads to the finding and conclusion that West Hills Park's omissions in failing to conduct or obtain studies and give notice were activities on its land that were a producing cause of damage to Boxcars.

The record before this court leads to the conclusion that Home Depot is not required to indemnify West Hills Park for the damages imposed in the state-court judgment in favor of Boxcars.

## IV.    Conclusion

West Hills Park is not entitled to indemnity from Home Depot. Final judgment dismissing West Hills Park's indemnity claim is entered by separate order.

SIGNED on September 18, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge